UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LISA M. ZYCH, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:03CV01203 AGF |
| ) | |
| PATRICIA CORNELL, ) | |
| ) | |
| Respondent, ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the petition of Missouri state prisoner Lisa Zych for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Petitioner was convicted by a jury of one count of second-degree murder and one count of armed criminal action. She was sentenced as a prior offender to consecutive terms of imprisonment of 25 years and 10 years, respectively. The Missouri Court of Appeals affirmed Petitioner's convictions on March 21, 2000, with the mandate issuing on April 21, 2000. Petitioner filed a timely motion for post-conviction relief on June 2, 2000. The motion court denied this motion without a hearing, and the denial was affirmed on appeal on April 16, 2002.

On May 28, 2002, the Missouri Court of Appeals denied Petitioner's motion for rehearing and/or transfer to the Missouri Supreme Court. On September 12, 2002, the mandate related to the April 16, 2002 decision of the Missouri Court of Appeals issued.

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

On August 27, 2002, the Missouri Supreme Court denied Petitioner's direct application to transfer the case to that court. The present habeas action was filed on August 27, 2003.

In the present habeas action, Petitioner claims that her constitutional rights were violated in the following ways:

(1) Trial counsel was ineffective for failing to object to the introduction of Petitioner's uncharged crimes, prior bad acts, and felony record;

(2) Appellate counsel was ineffective for failing to file a motion for rehearing in the Missouri Court of Appeals, thereby foreclosing any further review of Petitioner's direct appeal by a higher court; and

(3) The prosecutor failed to disclose a deal with a State's witness (Michael Rademeyer) for leniency in exchange for his testimony.

Respondent argues that habeas relief should be denied because the state courts' adjudication of all of Petitioner's claims was not legally or factually unreasonable. For the reasons set forth below, habeas relief shall be denied on all claims.[2]

## BACKGROUND

**Trial**

In affirming Petitioner's convictions, the Missouri Court of Appeals summarized the evidence presented at trial as follows. Petitioner does not suggest that this summary is inaccurate, and the Court's own review of the record indicates that this is a fair portrayal of the evidence.

> On the morning of May 11, 1997, Defendant and her friend Tammy

---

[2] By Memorandum and Order dated July 24, 2006, this Court rejected Respondent's initial argument that Petitioner's habeas petition was untimely.

Curtner ("Curtner") were driving in south St. Louis. Curtner saw Lawrence Gronemeyer ("Gronemeyer") and waved him over to their car. Curtner negotiated with Gronemeyer for him to have sex with Curtner and Defendant in exchange for $50 for Curtner to buy cocaine, which she did.

Gronemeyer drove Curtner and Defendant to a hotel where they sniffed cocaine, smoked crack, and "got naked." Curtner and Gronemeyer had sexual intercourse, but Defendant and Gronemeyer did not. Later that morning, Gronemeyer took Curtner and Defendant back to their car, and Defendant and Gronemeyer exchanged telephone numbers.

On the night of May 11, Gronemeyer telephoned Defendant and asked if she wanted to party with him, and she agreed to meet him. Gronemeyer drove Defendant to his apartment, arriving at about 1:30 a.m. on May 12. Gronemeyer and Defendant sniffed cocaine and smoked crack throughout the night. Gronemeyer demanded to have sex with Defendant, but she refused. However, they both took their clothes off, and Defendant fondled Gronemeyer's penis. Gronemeyer also laid on top of Defendant, but she pushed him away.

Later that afternoon, Defendant asked Gronemeyer to take her home, but he told her that he was too high to drive her all the way back home. Rather, they drove to a nearby strip mall to get some food and alcohol, and then they returned to Gronemeyer's apartment.

That evening, Gronemeyer indicated that Defendant needed to live up to her end of the bargain, and he again demanded sex. Defendant agreed, but she wanted some more cocaine first. Gronemeyer refused. Defendant indicated that she needed to use the bathroom before they had sex. Defendant went to the bathroom and turned on the water at the sink. She then went into the kitchen and found a large butcher knife that she hid under her right sleeve. Defendant went back to the bathroom to turn off the water. Defendant returned to the living room where Gronemeyer was laying on the couch with a comforter pulled over him. Gronemeyer again said it was time to have sex. Defendant walked behind Gronemeyer, pulled the knife from her sleeve, and stabbed Gronemeyer in the chest. Gronemeyer screamed.

Defendant ran out the front door of the apartment and around the building to the rear where she was unable to continue because of a fence. When she returned to the front of the building, a neighbor, Mike

3

> Rademeyer ("Rademeyer"), saw Defendant and asked her what was going on. Defendant indicated that she and her boyfriend had a fight, and she asked Rademeyer for a ride to south St. Louis. Rademeyer refused, but he offered to talk with Gronemeyer. Defendant told Rademeyer that he could not talk with Gronemeyer because he would get mad. Although Defendant attempted to block his path, Rademeyer moved towards the front door of Gronemeyer's apartment and noticed blood and broken glass. Rademeyer asked Defendant whose blood it was, but she did not answer.
>
> Looking through the front door of Gronemeyer's apartment, Rademeyer saw Gronemeyer laying on the floor in two huge puddles of blood, gasping for air but saying nothing. Gronemeyer died on the way to the hospital.

Resp. Ex. E at 2-4.

Petitioner was charged by information with first-degree murder, armed criminal action, and being a prior offender. Resp. Ex. B at 8. Petitioner did not testify at trial. She called two witnesses, John Rabun, M.D., a clinical psychiatrist, and Dr. Michael Armour, a clinical psychologist, each of whom testified that Petitioner was suffering from post-traumatic stress syndrome, depression, and cocaine and alcohol dependence at the time that she stabbed Gronemeyer. Id. at 352-64, 417-24. They testified that those factors caused Petitioner to be unable to deliberate before stabbing Gronemeyer, although each expert believed that she knew what she was doing. Id. at 350-52, 371, 393, 417, 422-24. Additionally, in opening and closing arguments, defense counsel argued that Petitioner was acting in self-defense when she stabbed Gronemeyer.

The State played two videotapes to the jury: a confession by Plaintiff and a re-

enactment in which Petitioner agreed to participate. Resp. Ex. A at 273-76.[3]

Michael Rademeyer, who was a neighbor of Gronemeyer's, positively identified Petitioner in court as the individual whom he saw in Gronemeyer's yard on the night in question. Id. at 225-26. He testified that Petitioner attempted to block the entrance to Gronemeyer's house when Rademeyer attempted to investigate further. Id. at 225-28.

The State presented evidence that Petitioner lied to police in several instances. Petitioner first told police that she had left Gronemeyer's apartment when he was alive and returned to find his body. Id. at 238-40. When an officer confronted Petitioner with inconsistencies in her story, she admitted that she had lied and said that Gronemeyer's injuries were instead caused by running through a glass storm door. Id. at 248. Officers informed her that her story did not match Gronemeyer's wound, and Petitioner changed her story again, stating that she had stabbed Gronemeyer when he was standing in the living room. Id. at 267-68. She later admitted that this account was also inaccurate and then told officers that she had stabbed Gronemeyer while he was lying under a comforter on the couch. Id. at 271-72.

During the prosecutor's direct-examination of one of the investigating officers, Detective Timothy Lowery, the following occurred, without objection by defense counsel:

PROSECUTOR: Did you ever ask Miss Zych if she was a prostitute?

LOWERY: Yeah, she stated that she was not actively a prostitute, but she had been 3 or 4 months prior to this incident.

---

[3]The record does not contain the videotapes or a transcript of the videotapes.

Resp. Ex. A at 250.

Subsequently, during the prosecutor's cross-examination of Dr. Rabun, the following occurred:

> PROSECUTOR: She started using cocaine when she was 18, is that right?
>
> RABUN: That's correct.
>
> PROSECUTOR: And about the time this offense took place she was using cocaine to the extent of about 3 to 5 hundred dollars a day?
>
> RABUN: That's what she stated.
>
> PROSECUTOR: Did she tell you how she was able to afford that?
>
> RABUN: Yes.
>
> PROSECUTOR: What did she tell you?
>
> RABUN: She stated that she would steal items from her family or shoplift or do other illegal acts of that nature.
>
> PROSECUTOR: Anything else?
>
> RABUN: She, I believe she's been picked up for stealing a car or a felony theft in her past.

Id. at 384. Again, there was no objection by defense counsel.

The jury was instructed as to both of Petitioner's defenses -- inability to deliberate and self-defense. Resp. Ex. B at 43, 46.

**Direct Appeal**

On direct appeal, Petitioner argued that the trial court abused its discretion in failing to declare a mistrial, sua sponte, when the State elicited testimony from Detective

Lowery and Dr. Rabun that Petitioner had previously been accused of, associated with, or convicted of crimes, thereby diverting the jury's attention and violating Petitioner's right to due process and a fair trial before a fair and impartial jury. Resp. Ex. C. at 6. This was Petitioner's only point raised on appeal. Because the issue had not been preserved for appellate review, the appellate court reviewed the issue for plain error to decide whether manifest injustice or a miscarriage of justice would occur if the error were not corrected. The appellate court concluded that the evidence at issue was not logically or legally relevant, and that therefore, the evidence should have been excluded as evidence of prior uncharged misconduct showing the propensity of Petitioner to commit such crimes. Resp. Ex. E at 6-7.

The appellate court found, however, that the presumption of prejudice from this erroneous admission was overcome by the "overwhelming" evidence of Petitioner's guilt. In support of this conclusion, the court cited the following evidence: (1) Petitioner's videotaped confession; (2) a witness's positive identification of Petitioner; (3) Petitioner's attempt to flee the scene; (4) the neighbor's encounter with Petitioner at the scene; (5) Petitioner's attempt to prevent assistance for the victim; and (6) Petitioner admitting to lying to police several times. Id. at 7.

The appellate court concluded that, under the circumstances, Petitioner failed to satisfy her burden of demonstrating that manifest injustice or a miscarriage of justice would occur by not correcting the evidentiary error. Thus, the appellate court found no

plain error and affirmed the judgment of conviction and sentence of the trial court. Id. at 7.

**State Post-conviction Proceedings**

In her amended motion for post-conviction relief, Petitioner raised the three claims now asserted for federal habeas relief. She first argued that her due process rights were violated by the State's failure to disclose a deal it had with Rademeyer. Petitioner posited an agreement that, in exchange for Rademeyer's testimony against Petitioner, the State would grant him leniency in a pending DWI charge. Petitioner asserted that Rademeyer had three felony and nine misdemeanor DWI convictions. As evidence of a promise of leniency by the State, Petitioner pointed to the fact that Rademeyer had received the minimum sentence on the new DWI charge, which was substantially similar to the sentences he received for his past two felony DWI convictions. Resp. Ex. G at 19-20.

Petitioner also claimed ineffective assistance of counsel at trial due to trial counsel's failure to object to the introduction of the above quoted testimony of Dr. Rabun and Detective Lowery. Id. at 24.

Lastly, Petitioner claimed that she received ineffective assistance of counsel on direct appeal. She argued that appellate counsel should have filed a motion for re-hearing following the appellate court's unfavorable ruling. Petitioner claimed she was prejudiced because, absent such a motion, the Missouri Court of Appeals, the Missouri Supreme Court, and this Court could not reconsider the issue raised on appeal. Id. at 32.

The trial court rejected all claims, without holding an evidentiary hearing. On

Petitioner's claim of prosecutorial misconduct in failing to disclose a deal with Rademeyer, the court held that Petitioner did not present any credible evidence that the State had such a deal. The court further held that, in any event, this claim was outside the scope of post-conviction relief. Resp. Ex. G at 56-57. On Petitioner's ineffective assistance of trial counsel claim, the court held that the overwhelming evidence of Petitioner's guilt minimized any prejudice resulting from the admission of the challenged evidence. The court listed the overwhelming evidence as including that Petitioner was witnessed running from the victim's house, that she lied to Rademeyer at the scene and to police, and that Petitioner had made oral admissions and a videotaped statement implicating herself in the murder. Id. at 57-58. On Petitioner's claim of ineffective assistance of appellate counsel, the court held again that, because the evidence of Petitioner's guilt was so overwhelming, a motion for a re-hearing would have been fruitless. Id. at 63.

On appeal from the denial of post-conviction relief, the Missouri Court of Appeals affirmed the judgment of the motion court. Applying the two-prong test of Strickland v. Washington, 466 U.S. 668, 687-88 (1984), to the ineffective assistance of trial counsel claim, the court first concluded that Petitioner's prior stealing and prostitution three to four months prior to the murder were not relevant. The court assumed the trial counsel's failure to object to the admission of this evidence was therefore incompetent, satisfying Strickland's first prong. The court then found, however, that Petitioner failed to establish Strickland's second prong because she could not demonstrate that she was prejudiced by

9

the admission of the challenged evidence. The court stated that the State presented overwhelming evidence that Petitioner was guilty of murder,[4] and that the jury legitimately knew that Petitioner was addicted to drugs, engaged in acts of prostitution, and traded sex for cocaine. The court, therefore, concluded that had the challenged evidence been excluded, there was no reasonable probability that the outcome of the case would have been different. Id. at 5-6.

As to the remaining two claims, the appellate court summarily held that the trial court's denial of them was based on findings of fact that were not clearly erroneous. Id. at 6.

## DISCUSSION

**Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus cannot be granted unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

---

[4] The appellate court stated "The State's evidence was overwhelming that movant was guilty of murder in the first degree." Resp. Ex. J at 5. Since the jury determined that Petitioner lacked the ability to deliberate as necessary for murder in the first degree, this Court assumes that the appellate court meant murder in the second degree.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent but arrives at the opposite result.  Price v. Vincent, 538 U.S. 634, 640 (2003) (citing Williams v. Taylor, 529 U.S. 362, 405 (2000)).  The state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 413; see also Linehan v. Milczark, 315 F.3d 920, 925 (8th Cir. 2003).

A case cannot be overturned merely because the federal habeas court concludes in its independent judgment that the relevant state-court decision incorrectly applied federal law; the application of federal law must also be "unreasonable."  Colvin v. Taylor, 324 F.3d 583, 587 (8th Cir. 2003) (under AEDPA, a writ of habeas corpus may not be granted "unless the relevant state court decision is both wrong and unreasonable").  The factual findings of the state court also may be challenged in a § 2254 petition, but they are subject to "an even more deferential review."  Id.  Factual findings by the state court "shall be presumed to be correct," a presumption that will be rebutted only by "clear and convincing evidence."  Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001); § 2254(e)(1).

**Ineffective Assistance of Trial Counsel**

Petitioner claims that defense counsel was ineffective in failing to object to the

above-quoted testimony of Detective Lowery and Dr. Rabun concerning prior stealing and prostitution. The Sixth Amendment guarantees a criminal defendant the right to effective assistance of trial counsel. Strickland, 466 U.S. at 686. To succeed on such a claim, a habeas Petitioner must establish both "'that counsel's representation fell below an objective standard of reasonableness," and that but for counsel's deficiency, there is "a reasonable probability'" that the result of the trial would have been different. Id. at 688.

Error by counsel, even if professionally unreasonable, does not necessarily require that a judgment be set aside. "[A] defendant must affirmatively show prejudice. It is not sufficient for a defendant to show that the errors had some 'conceivable effect' on the result of the proceeding . . . . The defendant must show that because of counsel's error, there is a reasonable probability that the result of the proceeding would have been different. 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Odem v. Hopkins, 382 F.3d 846, 850 (8th Cir. 2004) (quoting Strickland, 466 U.S. at 693-94). Moreover, in the context of a § 2254 petition, a petitioner "must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." Underdahl v. Carlson, 381 F.3d 740, 742 (8th Cir. 2004) (quoted case omitted); see also Green v. Norris, 394 F.3d 1027, 1029 (8th Cir. 2005) (habeas court's review of an ineffective assistance claim is "highly-deferential" to state courts' application of legal standard to the facts).

The state courts correctly identified Strickland as the standard to apply. From a review of the record, the Court finds that the state courts' determination that Petitioner

was not prejudiced by the admission of the above-mentioned evidence at trial was reasonable. See Basile v. Al Luebbers, 2001 WL 157471, at *2 (8th Cir. 2001) (concluding that defense counsel's failure to object to the admission of prior bad acts was not prejudicial because it "could not reasonably be believed to have affected the trial's result"); Harris v. Bowersox, 184 F.3d 744, 755 (8th Cir. 1999) (concluding that the admittance of propensity evidence did "not cast doubt upon the fundamental fairness" of the trial because there was "overwhelming" evidence of petitioner's guilt).

**Ineffective Assistance of Appellate Counsel**

Petitioner claims that appellate counsel was ineffective for failing to file a motion for re-hearing after the appellate court affirmed the trial court's judgment on direct appeal. To satisfy the prejudice prong of a claim of ineffective assistance of appellate counsel, it is not enough for a habeas petitioner to show that counsel's errors had some conceivable effect on the outcome of the proceeding; instead, professional deficiencies on the part of appellate counsel will only warrant federal habeas relief if the deficiencies actually affected petitioner's appellate proceedings. Pfau v. Ault, 409 F.3d 933, 939 (8th Cir. 2005); Carter v. Bowersox, 265 F.3d 705, 713-14 (8th Cir. 2001) (when a claim of ineffective assistance involves appellate counsel, a habeas petitioner must show that "there is a reasonable probability that the result of the direct appeal would have been different if the argument had been made").

The state courts' adjudication of this claim was not unreasonable. As the state appellate court stated, the evidence against Petitioner was so overwhelming as to likely

render any re-hearing proceedings fruitless. Moreover, Petitioner did not provide any grounds that would have justified a re-hearing. See Williams v. Lockhart, 772 F.2d 475, 480 (8th Cir. 1985) (failure of appellate counsel to seek re-hearing of an unfavorable decision in petitioner's direct appeal from a state court conviction did not entitle petitioner to federal habeas relief on the basis of ineffective assistance of counsel, in that petitioner alleged no ground that would have justified a re-hearing).

**Prosecutor's Failure to Disclose a Deal with a State's Witness**

Petitioner claims prosecutorial misconduct because the State failed to reveal an agreement with Rademeyer for leniency on a pending felony charge in exchange for his testimony against Petitioner. Due process requires that the government disclose any promise that a key witness will not be prosecuted if he testifies for the government; evidence of such an agreement would be relevant to the witness's credibility and the jury is entitled to know of it. Giglio v. United States, 405 U.S. 150, 154-55 (1972); Clay v. Bowersox, 367 F.3d 993, 1000 (8th Cir. 2004).

Here, the state courts' findings that Petitioner failed to present any credible evidence that the State had a deal with Rademeyer is reasonable. The record contains no evidence that the State and the witness had made any agreement, and Petitioner's claim appears to be based on mere speculation.

## CONCLUSION

The Court believes that this action was timely filed, but that Petitioner is not entitled to federal habeas relief on any of her claims. The Court does not believe that this

14

is a case in which reasonable jurists might find the Court's assessment of Petitioner's claims debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2253(c)(1)(A). See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (setting forth standard for denying certificate of appealability).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's application for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not issue in this case.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of September, 2006.